UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| TERESA N.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Case No. 1:20-cv-320 |
| | ) |
| KILOLO KIJAKAZI[2], | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, Teresa N., on September 11, 2020. For the following reasons, the decision of the Commissioner is **REMANDED.**

*Background*

The plaintiff, Teresa N., filed applications for Disability Insurance Benefits and Supplemental Security Income on August 23, 2017, alleging a disability onset date of June 29, 2017. (Tr. 15). The claims were denied initially on December 12, 2017, and upon reconsideration on April 3, 2018. (Tr. 15). Thereafter, Teresa N. timely filed a written request for a hearing. (Tr. 15). The hearing occurred on August 26, 2019 before Administrative Law Judge (ALJ) Kathleen Winters. (Tr. 15). Vocational Expert (VE) Julie Dyer also appeared at the hearing, via phone. (Tr. 15). The ALJ issued an unfavorable decision on November 7, 2019. (Tr. 15-28). The Appeals Council denied review making the ALJ's decision the final decision of the

---

[1] To protect privacy, the plaintiff's full name will not be used in this Order.
[2] Andrew M. Saul was the original Defendant in this case. He was sued in his capacity as a public officer. On July 9, 2021, Kilolo Kijakazi became the acting Commissioner of Social Security. Pursuant to **Federal Rule of Civil Procedure 25(d)**, Kilolo Kijakazi has been automatically substituted as a party.

Commissioner.  (Tr. 1-3).

First, the ALJ noted that Teresa N. met the insured status requirements of the Social Security Act through December 31, 2017.  (Tr. 18).  At step one of the five-step sequential analysis for determining whether an individual is disabled, the ALJ found that Teresa N. had not engaged in substantial gainful activity since June 29, 2017, her alleged onset date.  (Tr. 18).

At step two, the ALJ determined that Teresa N. had the following severe impairments: degenerative joint disease of the AC joint of the left shoulder, degenerative disc disease, obesity, and depression. (Tr. 18).  The ALJ found that the above medically determinable impairments significantly limited Teresa N.'s ability to perform basic work activities.  (Tr. 18).  Teresa N. also alleged a disability due to hepatitis C and post-traumatic stress disorder.  (Tr. 18).  However, the ALJ indicated that these caused no more than minimal limitations on her ability to engage in basic work activities and were non-severe impairments.  (Tr. 18).

At step three, the ALJ concluded that Teresa N. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  (Tr. 19-20).  The ALJ found that no medical evidence indicated diagnostic findings that satisfied any listed impairment.  (Tr. 19-20).

After consideration of the entire record, the ALJ then assessed Teresa N.'s residual functional capacity (RFC) as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can frequently climb stairs or ramps, balance, stoop, kneel, crouch, or crawl; she can occasionally reach in all directions with the left (non-dominant) upper extremity; and can never climb ladders, ropes, or scaffolds. Must avoid concentrated exposure to moving machinery and unprotected heights. She can complete work that can be learned in thirty days, or less, with simple routine tasks; the claimant is able to remain on task in two-hour increments; and with occasional interaction with coworkers and supervisors, and no

interaction with the general public.

(Tr. 21). The ALJ explained that in considering Teresa N.'s symptoms she followed a two-step process. (Tr. 21). First, she determined whether there was an underlying medically determinable physical or mental impairment that was shown by a medically acceptable clinical or laboratory diagnostic technique that reasonably could be expected to produce Teresa N.'s pain or other symptoms. (Tr. 21). Then she evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limited Teresa N.'s functioning. (Tr. 21).

After considering the evidence, the ALJ found that Teresa N.'s medically determinable impairments reasonably could have caused some symptomology. (Tr. 21). However, she found that her statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 22).

At step four, the ALJ found that Teresa N. was unable to perform her past relevant work as a waitress. (Tr. 26). However, the ALJ then found jobs that existed in significant numbers in the national economy that Teresa N. could perform. (Tr. 27). Therefore, the ALJ found that Teresa N. had not been under a disability, as defined in the Social Security Act, from June 29, 2017, through the date of her decision. (Tr. 28).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive"); **Moore v. Colvin**, 743 F.3d 1118, 1120-21 (7th Cir. 2014); **Bates v. Colvin**, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct

legal standards and supported her decision with substantial evidence"). Courts have defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." ***Biestek v. Berryhill***, 139 S. Ct. 1148, 1154 (2019) (*quoting* ***Consolidated Edison Co. v. NLRB***, 305 U.S. 197, 229 (1938)); ***Deborah M. v. Saul***, 994 F.3d 785, 788 (7th Cir. 2021); ***Zoch v. Saul***, 981 F.3d 597, 601 (7th Cir. 2020). A court must affirm an ALJ's decision if the ALJ supported her findings with substantial evidence and if there have been no errors of law. ***Roddy v. Astrue***, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." ***Lopez ex rel Lopez v. Barnhart***, 336 F.3d 535, 539 (7th Cir. 2003).

Disability insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. § 404.1520**. The ALJ first considers whether the claimant is presently employed and "doing … substantial gainful activity." **20 C.F.R. § 404.1520(b)**. If she is, the claimant is not disabled and the evaluation process is over. If she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits … physical or mental ability to do basic work activities." **20 C.F.R. § 404.1520(c)**; *see* ***Williams v. Colvin***, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe

impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the Commissioner acknowledges the impairment to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of her past work. If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled. **20 C.F.R. § 404.1520(e)**. However, if the claimant shows that her impairment is so severe that she is unable to engage in her past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in consideration of her age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f)**; *see* **Biestek**, 139 S. Ct. at 1157 (upon the request of a disability benefits applicant, a vocational expert's refusal to provide the private market-survey data underlying her opinion regarding job availability does not categorically preclude the expert's testimony from counting as "substantial evidence" but, instead, the inquiry is case-by-case).

Teresa N. has requested that the court remand this matter for additional proceedings, or in the alternative, reverse the ALJ's decision and award benefits. In her appeal, Teresa N. argues that: (1) the ALJ erred by failing to articulate the combined functional limitations of her severe and non-severe impairments and incorporate those limitations in the RFC; (2) the ALJ failed to properly evaluate the medical opinion evidence and incorporate all of her limitations in the RFC; and (3) that the ALJ failed to properly evaluate her symptom testimony and failed to consider her impairments in combination.

Of the three arguments, the court finds it necessary to address only the second. As to the

second issue, Teresa N. argues that ALJ failed to properly evaluate the medical opinion evidence and incorporate all of her limitations in the RFC. Included in that argument is Teresa N.'s claim that the ALJ failed to properly consider the opinions of Dr. Larry Lambertson, her treating psychiatrist, and Rebeca Haynes, psychiatrist nurse practitioner.

On July 3, 2019, Haynes, in conjunction with Dr. Lambertson, offered various opinions as to Teresa N.'s mental limitations in their answers to the 2019 Mental Health Questionnaire (Questionnaire). (Tr. 3078-83). The opinions included that if Teresa N. were to work full time, her symptoms and mental functioning would worsen causing her to have "increase[d] suicidal thoughts." (Tr. 3079). Additionally, Haynes and Dr. Lambertson found that Teresa N.'s mental impairments would cause her to miss more than three days of work per month, which the VE testified would preclude full-time competitive employment. (Tr. 70, 3079).

The ALJ found this opinion to be unpersuasive and gave the following explanation:

> It is not clear the qualifications of the clinician providing this opinion because the signature indicates that the clinician is a Nurse Practitioner but the printed form indicated "psychiatrist." (Exhibit B33/F3). Regardless of the clinician's qualifications, this opinion is not persuasive because it is not supported within the opinion by objective observations, clinical testing, or other impartial notes. Moreover, this clinician admitted that they [*sic*] had seen the claimant on only one occasion. Such does not support the establishment of a longitudinal treatment relationship and fails to provide a significant basis upon which the clinician could base an opinion. Finally, this opinion is simply not consistent with or supported by the substantial evidence of record.

(Tr. 26).

The Social Security Administration's previous regulations entitled the opinions of certain physicians to controlling weight based on their status as a claimant's treating physician, however, the new regulations have done away with this requirement. *See* **20 C.F.R. § 404.1520c** ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)…including those from your medical sources"). Instead, ALJs must consider

all medical opinions based on factors set out by the Social Security Administration with *supportability* and *consistency* being the most important factors for the ALJ to discuss. **Kaehr v. Saul**, 2021 WL 321450, at *3 (N.D. Ind. Feb. 1, 2021) (emphasis added). ALJ's can, but are not required to, explain how they evaluated the remaining factors which include the relationship with the claimant and any specializations. **§ 404.1520c**.

     Teresa N. recognizes that the evaluation requirements for treating physicians have changed and that the most important factors an ALJ must consider, as to any medical opinion, is the supportability and consistency of it. Nonetheless, Teresa N. claims that the ALJ failed to properly evaluate Haynes and Dr. Lambertson's opinions. First, Teresa N. points out that the ALJ's finding of the lack of a "longitudinal treatment relationship" and that "they had seen the claimant on only one occasion" was incorrect. (Tr. 26). The record shows that while Haynes may have only treated Teresa N. once, Dr. Lambertson had been treating her since 2016. (Tr. 398-408). Specifically, Dr. Lambertson was the sole psychiatrist on Teresa N.'s treatment team at Park Center. Additionally, the ALJ failed to note Dr. Lambertson's co-signature on the Questionnaire, his long-standing treatment relationship with Teresa N., and Haynes' attestation that she "reviewed and was familiar with" Park Center records.

     Next, contrary to the ALJ's finding, Teresa N. claims that the opinion of Dr. Lambertson and Haynes was supported by, and was consistent with, other evidence in the record. Specifically, she points to the Park Center records which span a three-year period and document her consistent mental health treatment, inpatient hospitalizations, and regular medical reviews and adjustments.

     In response, the Commissioner primarily restates the ALJ's findings but notes that Teresa N. received mostly conservative mental health treatment and that she improved with medication.

Additionally, the Commissioner states that Teresa N. was able to respond to questions from medical providers, interact with family and friends, handle personal hygiene, and regularly babysit for her grandchildren.

As an initial note, the ALJ's statement that "it [wa]s not clear the qualifications of the clinician providing this opinion because the signature indicates that the clinician is a Nurse Practitioner, but the printed form indicated 'psychiatrist'" is misleading. Dr. Lambertson's name is printed and he signed on the line designated for the attending psychiatrist making it very clear that he, at a minimum, had supervision of the completion of the Questionnaire at issue. (Tr. 3080).

As explained above, supportability and consistency of a medical opinion are the factors that the ALJ is required to consider in determining its reliability. While the length of the treatment relationship can be considered, it is not controlling. Nonetheless, the ALJ put great emphasis on this factor when concluding that the opinion was unpersuasive. Based on the record, the ALJ's finding of a lack of treatment relationship is unsupported. While Teresa N. only saw Haynes once, the ALJ did not address the fact that the Questionnaire also stated that Teresa N. "ha[d] been seen by many [Park Center] providers routinely since 2016." (Tr. 3078). Among those providers was Dr. Lambertson. As a result, the ALJ ignored the long and ongoing relationship between Dr. Lambertson and Teresa N. (Tr. 398-408, 1063, 2643). *See Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001); *Suetkamp v. Saul*, 406 F.Supp.3d 715, 719 (N.D. Ind. Aug. 27, 2019) (finding that an ALJ must "articulate at some minimal level h[is] analysis of the evidence" and may not "ignore an entire line of evidence that is contrary to [her] findings"). Records from that relationship show diagnoses of depression, PTSD, Bipolar I disorder, numerous medicine changes and increases, ongoing suicidal thoughts with a plan in place, and

reports of seeing shadows.

The ALJ's other reason for discounting the opinion was that it was "simply not consistent with or supported by the substantial evidence of record." (Tr. 26). Not only was there three years' worth of records detailing the treatment Teresa N. received from Dr. Lambertson and other providers at Park Center to corroborate the opinions found in the Questionnaire, there was medical evidence from outside providers that also supported the opinions. For example, Dr. Revathi Bingi, licensed psychologist, stated that Teresa N. "appear[ed] to be dealing with … mental health conditions, continue[d] to have suicidal ideation, and appear[ed] to be someone in great need of help." (Tr. 999). Both the Commissioner and Teresa N. state that during the visit with Dr. Bingi she was encouraged to go to the hospital due to suicidal ideations, but ultimately did not. (Tr. 997). The court notes that the only other mental health opinion evidence in this case was offered by two state agency consultants which the ALJ found only to be partially persuasive.

Lastly, the ALJ stated, and the Commissioner reiterated, that Teresa N. had mostly conservative mental health treatment. (DE 31 at 12). This statement also is blatantly refuted by the record in this case. Several inpatient hospitalizations, monthly mental health treatment by psychiatrists and psychologists, as well as repeated medication changes and increases certainly do not fit the definition of conservative mental health treatment.

"When an ALJ denies benefits, [s]he must build an accurate and logical bridge from the evidence to h[er] conclusion ... " ***Holsinger v. Commissioner of Social Security***, 2018 WL 1556409, at *8 (N.D. Ind. Mar. 29, 2018) (citing ***Chase v. Astrue***, 458 Fed.Appx. 553, 556-57 (7th Cir. 2012)); ***Ayala v. Berryhill***, 2018 WL 6696548, at *1 (N.D. Ill. Dec. 20, 2018). As discussed above, not only has the ALJ erred by failing to properly weigh the medical opinion of Dr. Lambertson and Haynes, she also has failed to build a logical bridge from the evidence

9

presented in the record to her conclusion that the medical opinion was not persuasive. Her bases for this finding were contrary to the record.

Teresa N. makes other arguments regarding her symptoms and limitations. However, because the ALJ erred in her assessment of the treating source of opinion of Dr. Lambertson, as well as Haynes, the court need not address the additional arguments at this time. The ALJ will have the opportunity to revisit these other issues on remand.

Based on the foregoing reasons, the decision of the Commissioner is **REMANDED.**

ENTERED this 3rd day of January, 2022.

/s/ Andrew P. Rodovich
United States Magistrate Judge